1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10 | AMAZON.COM, INC., a Delaware
corporation; AMAZON.COM SERVICES LLC,
11 | a Delaware limited liability company; and LE
LABO HOLDING LLC, a Delaware limited
12 | liability company,

13 |         Plaintiffs,

14 |     v.

15 | CARLOS STEVE VILLACIS PICO, an
individual; GLOBAL DIAZ LLC, a Delaware
16 | limited liability company, d/b/a BASGAX;
JOSHUA DOMINGUEZ, an individual; and
17 | DOES 1-10,

18 |         Defendants.

19

No.

**COMPLAINT FOR DAMAGES,
EQUITABLE RELIEF, AND
CANCELLATION OF FEDERAL
TRADEMARK REGISTRATION (NO.
6454320)**

20              **I.    INTRODUCTION**

21       1.       This case involves Defendants' unlawful and expressly prohibited sale of

22 counterfeit perfumes bearing the trademarks of Le Labo Holding LLC ("Le Labo").

23 Amazon.com, Inc., Amazon.com Services LLC (collectively, "Amazon"), and Le Labo (together

24 with Amazon, "Plaintiffs") jointly bring this lawsuit to permanently prevent and enjoin

25 Defendants from causing future harm to Amazon's and Le Labo's customers, reputations, and

26 intellectual property ("IP"), and to hold Defendants accountable for their illegal actions.

27

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 1

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

**The Amazon Store.**

2.     Amazon.com Services LLC owns and operates the Amazon.com store (the "Amazon Store"), and Amazon's affiliates own and operate equivalent counterpart international stores and websites. Amazon's stores offer products and services to customers in more than 100 countries around the globe. Some of the products are sold directly by Amazon entities, while others are sold by Amazon's numerous third-party selling partners. The Amazon brand is one of the most well-recognized, valuable, and trusted brands in the world. To protect its customers and safeguard its reputation for trustworthiness, Amazon invests heavily in both time and resources to prevent counterfeit and infringing goods from being sold in its stores. In 2024, Amazon invested more than a billion dollars and employed thousands of people—including machine learning scientists, software developers, and expert investigators—who were dedicated to protecting customers, brands, selling partners, and Amazon's stores from counterfeits, fraud, and other forms of abuses.

**Le Labo.**

3.     Founded in 2006, Le Labo is a New York-based perfume house which has become iconic for its collection of hand-made perfumes and home scents. With a line of more than 40 products distributed both domestically and internationally, Le Labo is now a worldwide leader in the perfume industry. Products made by Le Labo include fragrances, candles, soaps, lotions, shampoos, and many others. Le Labo products are sold globally, including in its own retail stores and selective high-end retailers. The Le Labo brand symbolizes not only high-quality but also authenticity and craftmanship.

4.     Le Labo owns, manages, enforces, licenses, and maintains IP, including various trademarks. Relevant to this Complaint, Le Labo owns the following registered trademarks.

| **Mark** | **Registration No. (International Classes)** |
|----------|----------------------------------------------|
| LE LABO | 4,659,715 (003, 035) |
| ANOTHER 13 | 6,753,564 (003) |

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 2

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

| **Mark** | **Registration No. (International Classes)** |
|:---:|:---:|
| SANTAL 33 | 6,806,693 (003) |
| ROSE 31 | 6,952,378 (003) |
| THE NOIR 29 | 7,019,953 (003) |

True and correct copies of the registration certificates for Le Labo's trademarks listed above are attached as **Exhibit A**.

5.     Le Labo also has pending federal trademark applications for its fragrance names IRIS 39 and PATCHOULI 24 and owns common law trademarks in these names. .

6.     Le Labo's registered trademarks and common law trademarks are collectively referred to as the "Le Labo Trademarks."

7.     Because of Le Labo's long, continuous, and exclusive use of the Le Labo Trademarks, the Le Labo Trademarks have come to mean—and are understood by customers, users, and the public to signify—products from Le Labo.

8.     Consumers also associate Le Labo with the distinctive design of its labels reminiscent of vintage apothecary bottles, as shown below in Figures 1 and 2.

*Figures 1 and 2: Examples of Le Labo's packaging for its fragrances.*

*Figure 1*



COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 3

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

*Figure 2*



9.      Le Labo also extensively advertises and markets it fragrances using curated images, such as Figures 3 and 4 shown below.

*Figures 3 and 4: Examples of Le Labo's promotional images.*

*Figure 3[1]*



---

[1] As of December 9, 2025, this image appears on Le Labo's website.

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 4

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

*Figure 4[2]*



**Fraudulent "Basgax" Trademark.**

10.     As described below, Defendants have engaged in a sophisticated campaign to market, advertise, and sell counterfeit Le Labo-branded products. Defendants use Le Labo's IP, including the Le Labo Trademarks, to pass off their inauthentic fragrances as Le Labo-branded products. At the same time, they have attempted to obfuscate their sale of counterfeit products by associating the products with a fraudulent trademark, "Basgax."

11.     On November 18, 2020, an entity named Libra Business Inc. ("Libra") applied to register the word mark "Basgax" in connection with "residential and commercial furniture." To support that application, Libra submitted a specimen of use in which the Basgax mark was displayed on a chair. On August 17, 2021, the United States Trademark and Patent Office ("USPTO") granted the registration for the Basgax word mark (Reg. No. 6454320) (the "'320 Registration").

---

[2] As of December 9, 2025, this image appears on Le Labo's Instagram account.

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 5

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

12.     Plaintiffs have been unable to uncover any record of the Basgax mark being used in commerce in the United States in connection with the sale of furniture, contrary to the representations in the '320 Registration. Notably, the website associated with Basgax—basgax.com—does not sell or advertise furniture.

13.     On April 12, 2024, Libra assigned the '320 Registration to Defendant Global Diaz LLC ("Global Diaz"), which is owned and operated by Defendant Carlos Steve Villacis Pico (together with Defendant Global Diaz, the "Basgax Defendants").

14.     On information and belief, since assuming rights to the Basgax mark, the Basgax Defendants have only used the Basgax mark to further their counterfeiting scheme, described below.

**Defendants' Counterfeiting Scheme.**

15.     From May 13, 2024 through October 8, 2024, Defendants advertised, marketed, offered, distributed, and sold counterfeit Le Labo-branded products in the Amazon Store, using the Le Labo Trademarks and IP, without authorization, in order to deceive customers about the authenticity and origin of the products and the products' affiliation with Le Labo. Defendants listed their products under the "Basgax" brand name, but they used Le Labo's unique fragrance names—such as SANTAL 33 and IRIS 39—to lure customers to their listing pages. Those listing pages also displayed unauthorized images of Le Labo products and packaging, as shown in Figure 5 below, to further deceive customers about the source of the goods. When customers purchased the listed products, Defendants caused to be shipped counterfeit Le Labo-branded fragrances.

1
2

*Figure 5: Example of Defendants' advertisement of a counterfeit*
*Le Labo-branded fragrance in the Amazon Store*

3
4
5
6
7
8
9
10
11



IRIS 39, Eau De Parfum Unisex, 3.4 Fl oz Spray - Unique Aromatic Experience
Brand: BASGAX

Currently unavailable.
We don't know when or if this item will be back in stock.

| | |
|---|---|
| **Brand** | BASGAX |
| **Item Form** | Liquid |
| **Item Volume** | 3.4 Fluid Ounces |
| **Special Feature** | Long Lasting |
| **Fragrance Concentration** | Eau de Parfum |

Report an issue with this product or seller

Click to see full view

12      16.     Defendants listed "Basgax" as the "Brand" for their counterfeit Le Labo fragrance

13   listings in the Amazon Store in an attempt to evade detection of their counterfeit sales by

14   Amazon and Le Labo. When customers searched the Amazon Store for one of Le Labo's

15   trademarked fragrance names—e.g., IRIS 39—Defendants' listing pages displaying that name

16   would come up. Coupled with the use of images that displayed the Le Labo Trademark, the

17   listing pages were designed to signal to customers that the listed products were genuine Le Labo

18   products.

19      17.     As discussed below, Amazon ultimately shut down the selling accounts through

20   which Defendants sold counterfeit Le Labo-branded products. However, on information and

21   belief, the Basgax Defendants continue to advertise, market, offer, and distribute counterfeit Le

22   Labo-branded products through their website, basgax.com.

23      18.     As a result of their illegal actions, Defendants have infringed and misused Le

24   Labo's IP; breached their contracts with Amazon; willfully deceived and harmed Amazon, Le

25   Labo, and their customers; compromised the integrity of the Amazon Store; and undermined the

26   trust that customers place in Amazon and Le Labo. Defendants' illegal actions have caused

27   Amazon and Le Labo to expend significant resources to investigate and combat Defendants'

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 7

wrongdoing and to bring this lawsuit to prevent Defendants from inflicting future harm to Amazon, Le Labo, and their customers.

## II.    PARTIES

19.    Amazon.com, Inc. is a Delaware corporation with its principal place of business in Seattle, Washington. Amazon.com Services LLC is a Delaware company with its principal place of business in Seattle, Washington.

20.    Le Labo is a Delaware limited liability company with its principal place of business in New York, New York.

21.    Defendants are a collection of individuals and entities, both known and unknown, who conspired and operated in concert with each other to engage in the counterfeiting scheme alleged in this Complaint. Defendants operated, controlled, and/or were responsible for the selling accounts detailed in Section E of the Facts (the "Selling Accounts"). Defendants are subject to liability for their wrongful conduct both directly and under principles of secondary liability including, without limitation, *respondeat superior*, vicarious liability, and/or contributory infringement.

22.    On information and belief, Defendant Carlos Steve Villacis Pico is an individual residing in Ecuador. Defendant Pico personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and he derived a direct financial benefit from that wrongful conduct.

23.    On information and belief, Defendant Global Diaz LLC d/b/a "Basgax" is a Delaware limited liability company with its principal place of business at 11322 Miramar Pkwy Unit # 112, Miramar, FL 33025. Defendant Global Diaz personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and it derived a direct financial benefit from that wrongful conduct. On further information and belief, Defendant Pico owns, operates, and controls Global Diaz, which is responsible for the website basgax.com.

24.     On information and belief, Defendant Joshua Dominguez, d/b/a Express Shopping USA, is an individual residing in California. Defendant Dominguez personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and he derived a direct financial benefit from that wrongful conduct.

25.     On information and belief, Defendants Does 1-10 (the "Doe Defendants") are individuals and/or entities working in active concert with each other and the named Defendants to knowingly and willfully manufacture, import, advertise, market, offer, distribute, and sell counterfeit Le Labo-branded products, or participate in the other wrongful conduct alleged in this Complaint. The identities of the Doe Defendants are presently unknown to Plaintiffs.

## III.    JURISDICTION AND VENUE

26.     The Court has subject matter jurisdiction over Le Labo's Lanham Act claim for trademark counterfeiting and trademark infringement, and Amazon's and Le Labo's Lanham Act claims for false designation of origin, pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). The Court has subject matter jurisdiction over Amazon's breach of contract claim and Amazon's and Le Labo's claims for violation of the Washington Consumer Protection Act, pursuant to 28 U.S.C. § 1332 and 1367.

27.     The Court has personal jurisdiction over Defendants because they transacted business and committed tortious acts within and directed to the State of Washington, and Amazon's and Le Labo's claims arise from those activities. Defendants affirmatively undertook to do business with Amazon, a corporation with its principal place of business in Washington, and sold in the Amazon Store products bearing counterfeit versions of the Le Labo Trademarks and which otherwise infringed Le Labo's IP. In addition, Defendants shipped products bearing counterfeit versions of the Le Labo Trademarks to consumers in Washington. Each Defendant committed, or facilitated the commission of, tortious acts in Washington and has wrongfully caused Amazon and Le Labo substantial injury in Washington.

28.     Further, Defendants have consented to the jurisdiction of this Court by agreeing to the Amazon Services Business Solutions Agreement ("BSA"), which provides that the

"Governing Courts" for claims to enjoin infringement or misuse of IP rights and claims related to the sale of counterfeit products in the Amazon Store are the state or federal courts located in King County, Washington. In addition, the Basgax Defendants created and used an Amazon Brand Registry account, and in doing so, entered into a binding and enforceable agreement with Amazon in Washington by accepting the Brand Registry Terms of Use.

29.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Western District of Washington. Venue is also proper in this Court because Defendants consented to it under the BSA.

30.     Pursuant to Local Civil Rule 3(e), intra-district assignment to the Seattle Division is proper because the claims arose in this Division, where (a) Amazon resides, (b) injuries giving rise to suit occurred, and (c) Defendants directed their unlawful conduct.

## IV.    FACTS

### A.    Amazon's Efforts to Prevent the Sale of Counterfeit Goods.

31.     Amazon works hard to build and protect the reputation of its stores as places where customers can conveniently select from a wide array of authentic goods and services at competitive prices. Amazon invests vast resources to ensure that when customers make purchases in Amazon's stores—either directly from Amazon entities or from one of its millions of third-party sellers—customers receive authentic products made by the true manufacturer of those products.

32.     A small number of bad actors seek to take advantage of the trust customers place in Amazon by attempting to create Amazon selling accounts to advertise, market, offer, distribute, and sell counterfeit products. These bad actors seek to misuse and infringe the trademarks and other IP of the true manufacturers of those products to deceive Amazon and its customers. This unlawful and expressly prohibited conduct undermines the trust that customers, sellers, and manufacturers place in Amazon, and tarnishes Amazon's brand and reputation, thereby causing irreparable harm to Amazon.

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 10

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

33.     Amazon prohibits the sale of inauthentic and fraudulent products and is constantly innovating on behalf of its customers and working with brands, manufacturers, rights owners, and others to improve the detection and prevention of counterfeit products from ever being offered to customers in Amazon's stores. Amazon employs dedicated teams of software engineers, research scientists, program managers, and investigators to prevent counterfeits from being offered in Amazon's stores. Amazon's systems automatically and continuously scan thousands of data points to prevent, detect, and remove counterfeits from its stores and to terminate the selling accounts of bad actors before they can offer counterfeit products. When Amazon identifies issues based on this feedback, it takes action to address them. Amazon also uses this intelligence to improve its proactive prevention controls. In 2024, Amazon's proactive controls blocked more than 99% of suspected infringing listings before a brand ever had to find and report them.

34.     In 2017, Amazon launched Brand Registry, a free service that offers rights owners an enhanced suite of tools for monitoring and reporting potential instances of infringement, regardless of their relationship with Amazon. Brand Registry delivers automated brand protections that use machine learning to predict infringement and proactively protect brands' IP. Brand Registry also provides a powerful Report a Violation Tool that allows brands to search for, identify, and report potentially infringing products using state-of-the-art image search technology.

35.     Amazon innovates on behalf of customers and selling partners to improve Amazon's Brand Registry, and to combat abuse. Amazon employs dedicated teams of software engineers, research scientists, program managers, and investigators to help ensure that legitimate sellers and product listings remain in the Store despite the efforts of bad actors to exploit Amazon's systems.

36.     In 2018, Amazon launched Transparency, a product serialization service that effectively eliminates counterfeits for enrolled products. Brands enrolled in Transparency can apply a unique 2D code to every unit they manufacture, which allows Amazon, other retailers,

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 11

law enforcement, and customers to determine the authenticity of any Transparency-enabled product, regardless of where the product was purchased. More than 2.5 billion product units have been verified as genuine through Amazon's Transparency program.

37.     In 2019, Amazon launched Project Zero, a program to empower brands to help Amazon drive counterfeits to zero. Project Zero introduced a novel self-service counterfeit removal tool that enables brands to remove counterfeit listings directly from Amazon's stores. This enables brands to take down counterfeit product offerings on their own within minutes. Since launch, more than 35,000 brands have enrolled in Project Zero.

38.     Amazon uses advanced technology and expert human reviewers to verify the identities of potential sellers. When prospective sellers apply to sell in Amazon's stores, they are required to provide a form of government-issued photo ID, along with other information about their business. Amazon employs advanced identity detection methods such as document forgery detection, image and video verification, and other technologies to quickly confirm the authenticity of government-issued IDs and whether such IDs match the individual applying to sell in Amazon's stores. In addition to verifying IDs, Amazon's systems analyze numerous data points, including behavior signals and connections to previously detected bad actors, to detect and prevent risks.

39.     Similarly, throughout the selling experience in Amazon's stores, Amazon's systems monitor selling accounts to identify anomalies or changes in account information, behaviors, and other risk signals. In the event that Amazon identifies a risk of fraud or abuse, it promptly initiates an investigation using automated and/or human review, may request additional information, and swiftly removes bad actors from its stores.

40.     In addition to the measures discussed above, Amazon actively cooperates with rights owners and law enforcement to identify and prosecute bad actors suspected of engaging in illegal activity. Lawsuits, like this one, as well as criminal referrals, are integral components of Amazon's efforts to combat counterfeits and other inauthentic products. Since its launch in 2020,

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 12

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

Amazon's Counterfeit Crimes Unit has pursued more than 24,000 bad actors through litigation and criminal referrals to law enforcement.

**B.    Le Labo and Its Anti-Counterfeiting Efforts.**

41.    Le Labo goes to great lengths and expends significant resources to protect consumers from counterfeits of its products, and is committed to leading efforts to combat counterfeit products.  Le Labo utilizes significant resources to combat counterfeit and infringing products, including partnering with specialized brand protection vendors on strategic policing and enforcement of its IP rights.  Le Labo's unwavering efforts have led to thousands of online enforcements and successful takedowns annually across marketplaces, social media platforms, and third-party domains/websites.

42.    Le Labo is currently enrolled in Brand Registry and Project Zero. Le Labo began actively using the tools and protections provided by these programs in response to the counterfeiting activity including that described in this Complaint.

**C.    Defendants Created Amazon Selling Accounts, Agreed Not to Sell Counterfeit Goods, and Agreed to Reimburse Amazon for Damages Arising from Customer Refunds.**

43.    Defendants established, controlled, and operated the two Selling Accounts detailed in Section E below. Defendants used these Selling Accounts to advertise, market, offer, distribute, and sell counterfeit Le Labo-branded products. In connection with these Selling Accounts, Defendants provided Amazon with names, email addresses, phone numbers, tax identification numbers, banking information, and either government-issued identification for an individual acting on behalf of the Selling Account or a copy of a government-issued record or tax document for the entity operating the Selling Account.

44.    To become a third-party seller in the Amazon Store, an applicant is required to agree to the BSA, which governs the seller's access to and use of Amazon's services and states Amazon's rules for selling in the Amazon Store. By entering into the BSA, each seller represents and warrants that it "will comply with all applicable Laws in [the] performance of its obligations and exercise of its rights" under the BSA. A true and correct copy of the applicable version of

the BSA, namely, the version Defendants last agreed to when using Amazon's services, is attached as **Exhibit B**.

45.    Under the terms of the BSA, Amazon specifically identifies the sale of counterfeit goods as "deceptive, fraudulent, or illegal activity" that violates Amazon's policies, and Amazon reserves the right to withhold payments and terminate the selling account of any bad actor who engages in such conduct. Ex. B, ¶¶ 2-3. The BSA requires the seller to defend, indemnify, and hold Amazon harmless against any claims or losses arising from the seller's "actual or alleged infringement of any Intellectual Property Rights." *Id.* ¶ 6.1.

46.    Additionally, the BSA incorporates, and sellers therefore agree to be bound by, Amazon's Anti-Counterfeiting Policy, the applicable version of which is attached as **Exhibit C**. The Anti-Counterfeiting Policy expressly prohibits the sale of counterfeit goods in the Amazon Store:

- The sale of counterfeit products is strictly prohibited.

- You may not sell any products that are not legal for sale, such as products that have been illegally replicated, reproduced, or manufactured[.]

- You must provide records about the authenticity of your products if Amazon requests that documentation[.]

Failure to abide by this policy may result in loss of selling privileges, funds being withheld, destruction of inventory in our fulfillment centers, and other legal consequences.

*Id.*

47.    Amazon's Anti-Counterfeiting Policy further describes Amazon's commitment to preventing the sale and distribution of counterfeit goods in the Amazon Store, and describes the consequences of selling inauthentic products:

- Sell Only Authentic and Legal Products. It is your responsibility to source, sell, and fulfill only authentic products that are legal for sale. Examples of prohibited products include:

  o Bootlegs, fakes, or pirated copies of products or content

  o Products that have been illegally replicated, reproduced, or manufactured

  o Products that infringe another party's intellectual property rights

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 14

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

- Maintain and Provide Inventory Records. Amazon may request that you provide documentation (such as invoices) showing the authenticity of your products or your authorization to list them for sale. You may remove pricing information from these documents, but providing documents that have been edited in any other way or that are misleading is a violation of this policy and will lead to enforcement against your account.

- Consequences of Selling Inauthentic Products. If you sell inauthentic products, we may immediately suspend or terminate your Amazon selling account (and any related accounts), destroy any inauthentic products in our fulfillment centers at your expense, and/or withhold payments to you.

- Amazon Takes Action to Protect Customers and Rights Owners. Amazon also works with manufacturers, rights holders, content owners, vendors, and sellers to improve the ways we detect and prevent inauthentic products from reaching our customers. As a result of our detection and enforcement activities, Amazon may:

  o Remove suspect listings.

  o Take legal action against parties who knowingly violate this policy and harm our customers. In addition to criminal fines and imprisonment, sellers and suppliers of inauthentic products may face civil penalties including the loss of any amounts received from the sale of inauthentic products, the damage or harm sustained by the rights holders, statutory and other damages, and attorney's fees.

- Reporting Inauthentic Products. We stand behind the products sold on our site with our A-to-z Guarantee, and we encourage rights owners who have product authenticity concerns to notify us. We will promptly investigate and take all appropriate actions to protect customers, sellers, and rights holders. You may view counterfeit complaints on the Account Health page in Seller Central.

*Id.*

48.     Additionally, under the BSA, sellers agree that the information and documentation they provide to Amazon in connection with their selling accounts—such as identification, contact, and banking information—will, at all times, be valid, truthful, accurate, and complete. Specifically, the BSA requires that:

- As part of the application process, you must provide us with your (or your business') legal name, address, phone number and e-mail address, as well as any other information we may request. Ex. B. ¶ 1.

- You will use only a name you are authorized to use in connection with a[ny Amazon] Service and will update all of the information you provide to us in connection with the Services as necessary to ensure that it at all times remains accurate, complete, and valid. *Id.* ¶ 2.

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 15

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

- Each party represents and warrants that: (a) if it is a business, it is duly organized, validly existing and in good standing under the Laws of the country in which the business is registered and that you are registering for the Service(s) within such country; (b) it has all requisite right, power, and authority to enter this Agreement, perform its obligations, and grant the rights, licenses, and authorizations in this Agreement; (c) any information provided or made available by one party to another party or its Affiliates is at all times accurate and complete[.] *Id*. ¶ 5.

49.    When Defendants registered as third-party sellers in the Amazon Store, and established their Selling Accounts, they agreed not to advertise, market, offer, distribute, or sell counterfeit products, and agreed to provide Amazon with accurate and complete information and to ensure that information remained accurate and complete.

50.    Defendants also agreed to reimburse Amazon for any amounts that Amazon was forced to refund to customers who purchased products from Defendants. The BSA provides:

- You will defend, indemnify, and hold harmless Amazon … against any … loss, damage, settlement cost, expense, or other liability … arising from or related to … Your Products, including the … refund … thereof[.] *Id.* § 6.1.

- If we determine that your actions or performance may result in returns, chargebacks, claims, disputes, violations of our terms or policies, violations of law or other risks to Amazon or third parties, then we may in our sole discretion withhold any payments to you for as long as we determine any related risks to Amazon or third parties persist. For any amounts that we determine you owe us, we may … collect payment or reimbursement from you by any other lawful means. *Id.* § 2.

**D.    The Basgax Defendants Opened Brand Registry Account Using the Fraudulent '320 Registration.**

**Basgax Trademark.**

51.    On November 18, 2020, Libra submitted an application (Ser. No. 90320397) to the USPTO to register the Basgax mark under International Class 20 in connection with "residential and commercial furniture." To support its application, Libra submitted as its specimen an image of a chair prominently bearing the Basgax mark. Libra claimed that the chair was being sold on "the famous online shop WISH." Libra further declared under penalty of perjury that "the [Basgax] mark is in use in commerce and was in use in commerce as of the

filing date of the application on or in connection with the goods…in the application," and that "the specimen[] shows the mark as used on or in connection with the goods …."

52.     On information and belief, Libra's statements in the application were false because the specimen was fabricated and Libra had never used the Basgax mark in commerce in connection with furniture.

53.     Relying on Libra's false statements, the USPTO granted the '320 Registration on August 17, 2021.

54.     Libra then authorized Defendant Global Diaz to use the Basgax mark on January 25, 2024, and it subsequently assigned the trademark to Defendant Global Diaz on April 12, 2024.

**Brand Registry Account.**

55.     On April 3, 2024, the Basgax Defendants applied for enrollment in Amazon's Brand Registry as Libra's purported licensee.

56.     Signing up for Brand Registry requires several affirmative actions on the part of the applicant, including acceptance of the Brand Registry Terms of Use.

57.     When the Basgax Defendants applied to participate in Brand Registry, Amazon presented them with the following screen:



58.     As shown above, the Brand Registry enrollment screen required the Basgax Defendants to read and affirm the following statement: "You agree that you will provide information that is accurate and truthful to the best of your knowledge in connection with the use

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 17

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

of Brand Registry." Also, to be eligible for a Brand Registry account, the Basgax Defendants had to be a rights owner or an authorized representative, and they had to demonstrate that they had an active trademark registration or a pending trademark application.

59.     The Basgax Defendants used the fraudulent '320 Registration to open their Brand Registry account.

60.     Through their Brand Registry account, the Basgax Defendants asserted that their rights in the Basgax mark were infringed by certain product listings in the Amazon Store. Amazon repeatedly rejected such notices, and it subsequently shut down Defendants' Brand Registry account.

61.     As of the date of this filing, the Basgax Defendants' '320 Registration remains in effect with the USPTO.

**E.      Defendants' Sale of Counterfeit Le Labo-Branded Products.**

62.     Defendants advertised, marketed, offered, distributed, and sold counterfeit Le Labo-branded products in the Amazon Store. Defendants listed their products under the brand name "Basgax" in an effort to conceal that they were selling counterfeit Le Labo-branded products from Amazon and Le Labo. At the same, the listing pages displayed Le Labo's fragrance names and images using the Le Labo Trademarks, as shown above in Figure 5, in order to attract customers who were interested in purchasing Le Labo products.

63.     When customers ordered the products, Defendants' products were shipped in packaging that was virtually identical to Le Labo's authentic packaging and that copied Le Labo's distinctive labels, as shown below.

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 18

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

*Figures 6 and 7: Show the packaging for the counterfeit Le Labo-branded products
sold by Defendants through the Global Diaz LLC Selling Account*

*Figure 6*



*Figure 7*



COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 19

*Figures 8 and 9: Show the packaging for the counterfeit Le Labo-branded products sold by Defendants through the Express Shopping USA Selling Account*

*Figure 8*



*Figure 9*



COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 20

1
2
3
4
5

64.    Le Labo has conducted test purchases and reviewed physical samples of Le Labo-branded products sold by Defendants' Selling Accounts. Le Labo has confirmed that the products bore the Le Labo Trademarks; that Le Labo has never authorized the sale of such products or the use of the Le Labo Trademarks on such products; and that the products were counterfeit, as detailed below.

6

**Selling Account #1 – Global Diaz LLC**

7
8
9
10
11

65.    From May 13, 2024 through September 27, 2024, the Basgax Defendants advertised, marketed, offered, distributed, and sold counterfeit Le Labo-branded fragrances in the Amazon Store through the Global Diaz LLC Selling Account. On information and belief, during this period, the Global Diaz LLC Selling Account was controlled and operated by the Basgax Defendants and, on further information and belief, other parties unknown.

12
13
14
15
16
17

66.    On June 23, 2024, Le Labo conducted test purchases from the Global Diaz LLC Selling Account of products advertised and offered for sale as Le Labo's unique fragrances. Defendants shipped products that bore the Le Labo Trademarks, in packaging that was virtually identical to Le Labo's authentic packaging and that copied the distinctive look of Le Labo's labels. Le Labo has examined the products and determined that they are counterfeit based on deviations from Le Labo's authentic products and packaging.

18

**Selling Account #2 – Express Shopping USA**

19
20
21
22
23

67.    From June 17, 2024 through October 8, 2024, Defendant Dominguez advertised, marketed, offered, distributed, and sold counterfeit Le Labo-branded fragrances in the Amazon Store through the Express Shopping USA Selling Account. On information and belief, during this period, the Express Shopping USA Selling Account was controlled and operated by Defendant Dominguez and, on further information and belief, other parties unknown.

24
25
26
27

68.    On June 23, 2024, Le Labo conducted test purchases from the Express Shopping USA Selling Account of products advertised and offered for sale as Le Labo's unique fragrances. Defendants shipped products that bore the Le Labo Trademarks in packaging that was virtually identical to Le Labo's authentic packaging and that copied the distinctive look of Le Labo's

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 21

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

labels. Le Labo has examined the products and determined that they are counterfeit based on deviations from Le Labo's authentic products and packaging.

### The Basgax Website.

69.     On information and belief, the Basgax Defendants also advertise, market, offer, distribute, and sell counterfeit Le Labo-branded fragrances via their website, basgax.com. Figure 10 below are screenshots, captured on or about September 15, 2025, of the website's advertisements for fragrances displaying Le Labo's trademarks—SANTAL 33 and ANOTHER 13—and copying Le Labo's distinctive style.

*Figure 10*



70.     Currently, the basgax.com website does not appear to sell directly to customers. Instead, the website purports to offer a "Reseller Program," boasting that over 150 businesses allegedly participate in wholesale, dropshipping, or brick-and-motor sales of its products.

71.     The Basgax Defendants also have displayed unauthorized copies of Le Labo's promotional images on the basgax.com website. For example, Figures 11 and 12 below, are images shown on the basgax.com website, as of December 9, 2025, which are blatant copies of Le Labo's images as shown in Figures 3 and 4 above, except with slight modifications, such as switching out "Le Labo" for "Basgax" on the product tags.

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 22

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

*Figure 11*



*Figure 12*



### F.  Defendants' Coordinated Sale of Counterfeit Le Labo Products.

72.    On information and belief, Defendants operated in concert with each other in their advertising, marketing, offering, distributing, and selling of counterfeit Le Labo-branded products. For example, Defendant Dominguez submitted to Amazon several invoices from Defendant Global Diaz, which purported to show that the Express Shopping USA Selling Account sourced its Le Labo-branded products from Global Diaz. In addition, Defendants employed the same tactics in an attempt to disguise their counterfeit sales in the Amazon Store, listing "Basgax" as the brand name while using Le Labo's fragrance names and images of the Le Labo Trademarks to attract customers who were interested in purchasing Le Labo products.

### G.  Amazon Shut Down Defendants' Selling Accounts.

73.    By selling counterfeit and infringing Le Labo-branded products, Defendants falsely represented to Amazon and its customers that the products Defendants sold were genuine products made by Le Labo. Defendants also knowingly and willfully used Le Labo's IP in

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 23

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

1    connection with the advertising, marketing, offering, distributing, and selling of counterfeit and

2    infringing Le Labo-branded products.

3        74.    At all times, Defendants knew they were prohibited from violating third-party IP

4    rights or any applicable laws while selling products in the Amazon Store, from providing

5    inaccurate information to Amazon and its customers, from misrepresenting the authenticity of

6    the products sold, and from misleading Amazon and its customers through their sale of

7    inauthentic Le Labo-branded products. Defendants have breached the terms of their agreements

8    with Amazon; deceived Amazon's customers and Amazon; infringed and misused the IP rights

9    of Le Labo; harmed the integrity of and customer trust in the Amazon Store; and tarnished

10   Amazon's and Le Labo's brands.

11       75.    After Amazon verified Defendants' sale of counterfeit Le Labo-branded products,

12   it blocked Defendants' Selling Accounts and terminated the Basgax Defendants' Brand Registry

13   account. In doing so, Amazon exercised its rights under the BSA to protect its customers and the

14   reputations of Amazon and Le Labo.

15       76.    Pursuant to Amazon's A-to-z guarantee, Amazon also proactively issued full

16   refunds to customers who purchased the counterfeit Le Labo-branded products from Defendants.

17   Defendants have not reimbursed Amazon.

18                    **V.    CLAIMS**

19                   **FIRST CLAIM**
                *(by Le Labo against all Defendants)*
20       **Trademark Counterfeiting and Trademark Infringement –**
            **15 U.S.C. § 1114 and 15 U.S.C. § 1125**
21
22       77.    Plaintiff Le Labo incorporates by reference the allegations of the preceding

     paragraphs as though set forth herein.
23
         78.    Defendants' activities constitute counterfeiting and infringement of the Le Labo
24
     Trademarks as described in the paragraphs above.
25
         79.    Le Labo owns the Le Labo Trademarks and it advertises, markets, offers,
26
     distributes, and sells its products using the Le Labo Trademarks. Le Labo uses the Le Labo
27

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

Trademarks to distinguish its products from the products and related items of others in the same or related fields.

80.    Because of Le Labo's long, continuous, and exclusive use of the Le Labo Trademarks, the Trademarks are understood by customers and the public to signify products from Le Labo.

81.    Defendants have unlawfully advertised, marketed, offered, distributed, and sold products bearing counterfeit and infringing versions of the Le Labo Trademarks in the Amazon Store and, on information and belief, continue to do so on the basgax.com website with the intent and likelihood of causing customer confusion, mistake, and deception as to the products' source, origin, and authenticity. Specifically, Defendants intend customers to believe, incorrectly, that the products originated from, were affiliated with, and/or were authorized by Le Labo and likely caused such erroneous customer beliefs.

82.    As a result of Defendants' wrongful conduct, Le Labo is entitled to recover its actual damages, Defendants' profits attributable to the infringement, treble damages, and attorneys' fees pursuant to 15 U.S.C. § 1117(a) and (b). Alternatively, Le Labo is entitled to statutory damages under 15 U.S.C. § 1117(c) for Defendants' use of counterfeit marks.

83.    Le Labo is further entitled to injunctive relief, including an order impounding all counterfeit and infringing products and promotional materials in Defendants' possession. Le Labo has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) the Le Labo Trademarks are unique and valuable properties that have no readily-determinable market value; (b) Defendants' counterfeiting and infringing activities constitute harm to Le Labo and Le Labo's reputation and goodwill such that Le Labo could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the counterfeit and infringing materials; and (d) the resulting harm to Le Labo, due to Defendants' wrongful conduct, is likely to be continuing.

1
2

## SECOND CLAIM
### *(by Le Labo and Amazon against all Defendants)*
### False Designation of Origin – 15 U.S.C. § 1125(a)(1)

3    84.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs as
4    though set forth herein.

5    85.    Le Labo owns the Le Labo Trademarks and advertises, markets, offers,
6    distributes, and sells its products using the trademarks described above, and uses the trademarks
7    to distinguish its products from the products and related items of others in the same or related
8    fields.

9    86.    Because of Le Labo's long, continuous, and exclusive use of the Le Labo
10   Trademarks, the Trademarks have come to mean, and are understood by customers, users, and
11   the public, to signify products from Le Labo.

12   87.    Amazon's reputation for trustworthiness is at the heart of its relationship with
13   customers. Defendants' actions in selling counterfeits pose a threat to Amazon's reputation
14   because they undermine and jeopardize customer trust in the Amazon Store.

15   88.    Defendants' unlawfully advertised, marketed, offered, distributed, and sold
16   products bearing counterfeit versions of the Le Labo Trademarks in the Amazon Store with the
17   intent and likelihood of causing customer confusion, mistake, and deception as to the products'
18   source, origin, and authenticity. Defendants' wrongful conduct misleads and confuses customers
19   and the public as to the origin and authenticity of the goods and services advertised, marketed,
20   offered, distributed, or sold in connection with the Le Labo Trademarks and wrongfully trades
21   upon Le Labo's goodwill and business reputation.

22   89.    Further, Defendants deceived Amazon and its customers about the authenticity of
23   the products they were advertising, marketing, offering, distributing, and selling, in direct and
24   willful violation of the BSA and Amazon's Anti-Counterfeiting Policies. Defendants' deceptive
25   acts were material to Amazon's decision to allow Defendants to sell their products in the
26   Amazon Store because Amazon would not have allowed Defendants to do so but for their
27   deceptive acts.

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 26

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

90. Defendants' misconduct has also caused both Amazon and Le Labo to expend significant resources to investigate and combat Defendants' wrongdoing and to bring this lawsuit to prevent Defendants from causing further harm to Amazon, Le Labo, and their customers. Defendants' illegal acts have caused irreparable injury to Amazon and Le Labo and, on information and belief, that injury is ongoing at least to the extent that Defendants continue to establish selling accounts under different or false identities. An award of monetary damages alone cannot fully compensate Amazon or Le Labo for its injuries, and thus Amazon and Le Labo lack an adequate remedy at law.

91. Defendants' conduct constitutes (a) false designation of origin, (b) false or misleading description, and (c) false or misleading representation that products originate from or are authorized by Le Labo, all in violation of 15 U.S.C. § 1125(a)(1)(A).

92. Plaintiffs are entitled to an injunction against Defendants, their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, as set forth in the Prayer for Relief below, along with attorneys' fees and costs in investigating and bringing this lawsuit. Defendants' acts have caused irreparable injury to Plaintiffs. On information and belief, that injury is continuing. An award of monetary damages cannot fully compensate Plaintiffs for their injuries, and Plaintiffs lack an adequate remedy at law.

93. Le Labo is further entitled to recover Defendants' profits, Le Labo's damages for its losses, and Le Labo's costs to investigate and remediate Defendants' conduct and bring this action, in an amount to be determined. Le Labo is also entitled to the trebling of any damages award as allowed by law. Amazon is also entitled to recover its damages arising from Defendants' sale of counterfeit products in the Amazon Store.

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 27

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

**THIRD CLAIM**
*(by Le Labo and Amazon against all Defendants)*
**Violation of Washington Consumer Protection Act, RCW 19.86.010, *et seq.***

94.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth herein.

95.     Defendants' advertising, marketing, offering, distributing, and selling of counterfeit Le Labo-branded products in the Amazon Store constituted unfair and deceptive acts or practices in the conduct of trade or commerce, in violation of RCW 19.86.020.

96.     Defendants' advertising, marketing, offering, distributing, and selling of counterfeit Le Labo-branded products harm the public interest by deceiving customers about the authenticity, origins, and sponsorship of the products.

97.     Defendants' advertising, marketing, offering, distributing, and selling of counterfeit Le Labo-branded products directly and proximately causes harm to and tarnishes Plaintiffs' reputations and brands, and damages their business and property interests and rights.

98.     Accordingly, Plaintiffs seek to enjoin further violations of RCW 19.86.020 and recover from Defendants their attorneys' fees and costs. Le Labo further seeks to recover from Defendants its actual damages, trebled, and Amazon further seeks to recover from Defendants its actual damages, trebled, arising from Defendants' sale of counterfeit products in the Amazon Store.

**FOURTH CLAIM**
*(by Le Labo against the Basgax Defendants)*
**Violation of Washington Consumer Protection Act, RCW 19.86.010, *et seq.***

99.     Le Labo incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

100.    The Basgax Defendants' advertising, marketing, offering, distributing, and selling of counterfeit Le Labo-branded products through the basgax.com website constitute unfair and deceptive acts or practices in the conduct of trade or commerce, in violation of RCW 19.86.020.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

101.    The Basgax Defendants' advertising, marketing, offering, distributing, and selling of counterfeit Le Labo-branded products harm the public interest by deceiving customers about the authenticity, origins, and sponsorship of the products.

102.    The Basgax Defendants' advertising, marketing, offering, distributing, and selling of counterfeit Le Labo-branded products directly and proximately cause harm and tarnish to Plaintiffs' reputations and brands, and damages their business and property interests and rights.

103.    Accordingly, Le Labo seeks to enjoin further violations of RCW 19.86.020 and recover their attorneys' fees and costs from the Basgax Defendants. Le Labo further seeks to recover from the Basgax Defendants its actual damages, trebled arising from the Basgax Defendants' sale of counterfeit products on the basgax.com website.

### FIFTH CLAIM
*(by Amazon.com Services LLC[3] against all Defendants)*
**Breach of Contract**

104.    Plaintiff Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

**Breach of the BSA.**

105.    Defendants established Amazon selling accounts and entered into Amazon's BSA, a binding and enforceable contract between Defendants and Amazon. Defendants also contractually agreed to be bound by the policies incorporated by reference into the BSA, including Amazon's Anti-Counterfeiting Policy and other policies as maintained on the Amazon seller website.

106.    Amazon performed all obligations required of it under the terms of the contract with Defendants or was excused from doing so.

107.    Defendants' sale and distribution of counterfeit Le Labo-branded products in the Amazon Store materially breached the BSA and the Anti-Counterfeiting Policy in numerous ways. Among other things, Defendants' conduct constitutes infringement and misuse of the IP rights of Le Labo.

---

[3] For the Fourth Claim only, "Amazon" shall refer to Amazon.com Services LLC only.

108.    Additionally, Defendants breached the BSA by failing to reimburse Amazon for the amounts it paid to refund customers who purchased counterfeit products from Defendants.

**Breach of Brand Registry Terms of Use.**

109.    The Basgax Defendants also entered into a valid and enforceable agreement with Amazon by applying for Amazon's Brand Registry.

110.    When the Basgax Defendants applied to Brand Registry, they agreed to provide accurate and truthful information to Amazon in exchange for the benefit of access and use of the Brand Registry services and tools.

111.    The Basgax Defendants relied on the '320 Registration to open a Brand Registry account. Although the goods identified in the '320 Registration were for furniture, the Basgax Defendants, on information and belief, have never sold any Basgax-branded furniture or related goods to date, and therefore the registration is invalid. On information and belief, the Basgax Defendants have only used the Basgax brand to sell counterfeit Le Labo-branded products that bear the Le Labo Trademarks.

112.    Amazon performed all of its contractual obligations under the Brand Registry Terms of Use. The Basgax Defendants breached their contractual obligations to Amazon under the Brand Registry Terms of Use by fraudulently relying on '320 Registration to gain access to Brand Registry.

113.    Defendants' breaches have caused significant harm to Amazon, and Amazon is entitled to damages in an amount to be determined.

**SIXTH CLAIM**
*(by Plaintiffs against Defendant Global Diaz)*
**Cancellation of the Basgax Trademark for Fraud**
**15 U.S.C. § 1119, § 1064**

114.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth herein.

115.    The Basgax Defendants have used the '320 Registration to sell counterfeit Le Labo-branded products in the Amazon Store and on the basgax.com website. Plaintiffs thus have

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 30

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

a real interest in seeking cancellation of the Basgax word mark and are entitled to bring this action.

116.    Defendant Global Diaz is the assignee and current owner of the Basgax mark.

117.    On November 18, 2020, Libra filed the application to register the Basgax mark, claiming that the mark was in use in commerce under Section 1(a) of the Lanham Act, 15 U.S.C. §1051(a), in connection with the goods listed in the application—"residential and commercial furniture"—and submitted a specimen purporting to show use.

118.    Libra, through its representative, also signed the declaration as part of that application for the Basgax mark attesting that: (1) "The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application;" and (2) "the specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date."

119.    On information and belief, Libra's statements that the mark was in use in commerce as of the filing date of the application and its specimen purporting to show such use were false. On further information and belief, the Basgax mark has never been used in connection with the sale of furniture.

120.    On information and belief, Libra knew these statements were false, as they were aware that the specimen was created and fabricated for purposes of seeking registration.

121.    Libra made these false representations to deceive the USPTO into accepting the application and issuing '320 Registration for the Basgax mark.

122.    But for these false statements, the USPTO would not have issued the '320 Registration. However, in reliance on these false statements, the USPTO did issue the registration for the Basgax mark on August 17, 2021.

123.    Libra assigned the Basgax mark to Defendant Global Diaz on April 12, 2024.

124.    On information and belief, when Libra transferred the Basgax mark to the Basgax Defendants, the Basgax Defendants were aware that the Basgax mark was not used in connection

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 31

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

with the sale of furniture, and the Basgax Defendants had no intention to use the Basgax mark in connection with the sale of furniture. On further information and belief, the Basgax Defendants adopted the Basgax mark solely to disguise their counterfeiting activity and to gain access to Amazon Brand Registry.

125.    Based on the foregoing, the Basgax Defendants obtained the Basgax mark registration fraudulently, which is grounds for cancellation of the registration in its entirety.

### VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

A.    That the Court enter an order permanently enjoining Defendants, their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them, from:

(i)    selling counterfeit or infringing products in Amazon's stores;

(ii)    selling counterfeit or infringing products to Amazon or any Amazon affiliate;

(iii)    importing, manufacturing, producing, distributing, circulating, offering to sell, selling, promoting, or displaying any product using any simulation, reproduction, counterfeit, copy, or colorable imitation of Le Labo's brand, the Le Labo Trademarks, or which otherwise infringes Le Labo's IP, in any store or in any medium, including, without limitations, the Amazon Store and basgax.com;

(iv)    using any indication of Le Labo's brand in connection with any product, service, or website;

(v)    filing fraudulent trademark applications or other fraudulent declarations and statements with the USPTO in order to gain access to Brand Registry or Amazon's other intellectual property protection services;

(vi)    enrolling or attempting to enroll in Amazon's Brand Registry program;

(vii)   using any false or fraudulent information to enroll or attempt to enroll in Amazon's Brand Registry program;

(viii)  assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (vii) above;

B.    That the Court enter judgment in Plaintiffs' favor on all claims brought by them;

C.    That the Court enter an order pursuant to 15 U.S.C. § 1118 impounding and permitting destruction of all counterfeit and infringing products bearing the Le Labo Trademarks or that otherwise infringe the Le Labo's IP, and any related materials, including business records and materials used to reproduce any infringing products or images, in Defendants' possession or under their control;

D.    That the Court enter an order requiring Defendants to provide Plaintiffs with a full and complete accounting of all amounts due and owing to Plaintiffs as a result of Defendants' unlawful activities;

E.    That the Court enter an order requiring Defendants to provide Plaintiffs with all records in their possession, custody, and control related to Defendants' unlawful activities, including materials sufficient to identify their supplier of the counterfeit Le Labo-branded products;

F.    That the Court enter an order authorizing Le Labo to give notice of the injunction to the domain registrar, domain registry, and host for basgax.com and any other domains and websites through which Defendants sell counterfeit Le Labo-branded products, and to require those registrars, hosts, and registries (1) to transfer or otherwise assign to Plaintiffs (or to perform acts to facilitate such transfer or assignment) control and ownership of the basgax.com domain and any other domains and websites through which Defendants sell counterfeit Le Labo-branded products, and (2) to cease providing services to Defendants involving hosting, facilitating access to, or providing any supporting services to basgax.com and any other domains and websites through which Defendants engage in the aforementioned enjoined activities;

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 33

G.      That the Court enter an order pursuant to 15 U.S.C. § 1119 directing the USPTO to cancel the '320 Registration;

H.      That the Court enter an order requiring Defendants to pay all general, special, and actual damages which Le Labo has sustained, or will sustain, as a consequence of Defendants' unlawful acts, plus Defendants' profits from the unlawful conduct described herein, together with its statutory damages, and that such damages be enhanced, doubled, or trebled as provided for by 15 U.S.C. § 1117, RCW 19.86.020, or otherwise allowed by law, and that Amazon's damages, plus Defendants' profits, related to Defendants' activities involving the sale of counterfeit products be enhanced, doubled, or trebled as provided by 15 U.S.C. § 1117, RCW 19.86.020, or as otherwise allowed by law;

I.      That the Court enter an order requiring Defendants to pay the maximum amount of prejudgment interest authorized by law;

J.      That the Court enter an order requiring Defendants to pay the costs of this action and Plaintiffs' reasonable attorneys' fees incurred in prosecuting this action, as provided for by 15 U.S.C. § 1117, RCW 19.86.020, or as otherwise allowed by law;

K.      That the Court enter an order requiring that identified financial institutions restrain and transfer to Plaintiffs all amounts arising from Defendants' unlawful counterfeiting activities as set forth in this lawsuit, up to a total amount necessary to satisfy monetary judgment in this case; and

L.      That the Court grant Plaintiffs such other, further, and additional relief as the Court deems just and equitable.

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 34

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

1    DATED this 16th day of December, 2025.

2                                      DAVIS WRIGHT TREMAINE LLP
                                       *Attorneys for Plaintiffs*
3

4                                      /s/ Scott Commerson
                                       Scott Commerson, WSBA #58085
5                                      350 South Grand Avenue, 27th Floor
                                       Los Angeles, CA 90071-3460
6                                      Tel: (213) 633-6800
                                       Fax: (213) 633-6899
7                                      Email: scottcommerson@dwt.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND
CANCELLATION OF TRADEMARK - 35

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax